**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| CARLOS ALBERTO GUTIERREZ-HIDALGO,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER BULLOCK,<br><br>Respondent. | ) | No. 2:26-cv-02857-TLP-cgc |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Carlos Alberto Gutierrez-Hidalgo, a noncitizen detained in the Western District of Tennessee, petitions pro se for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 2 at PageID 1, 7.) The Court ordered Respondent to show cause why the Writ should not be granted. (ECF No. 5.) Respondent responded. (ECF No. 7.) Petitioner replied. (ECF No. 8.)

The Court identified in the Response conflicting statements on whether Petitioner was subject to a final order of removal. (*See* ECF Nos. 7, 9.) If he was, then 8 U.S.C. § 1231 would govern his detention. But if he was granted voluntary departure in lieu of removal, then § 1231 would not apply. His voluntary departure date was set for May 12, 2026, but Respondent continued to detain him and then argued that he had overstayed the time that he should have voluntarily departed. (*See, e.g.*, ECF No. 7 at PageID 15–16.)

So the Court ordered Respondent to show cause as to whether Petitioner was subject to such an order of removal. (ECF No. 9 at PageID 38 n.2.) And it ordered Respondent to explain why Petitioner remained detained months after he should have been allowed to leave the United

States. (*Id.* at PageID 40.) Respondent answered the Second Order to Show Cause. (ECF No. 10.)

For the reasons below, the Court **GRANTS** the Petition.

## BACKGROUND

Petitioner is a noncitizen who challenges the legality of his ongoing detention. (ECF No. 2 at PageID 7.) He has been detained since October 30, 2025. (*Id.* at PageID 5.)

And since then, he has remained in custody at the West Tennessee Detention Center. (ECF No. 2 at PageID 2, 5; *see also* ECF No. 7 at PageID 15–16 (noting that Petitioner remains "detained in preparation for voluntary departure"); ECF No. 10 at PageID 41.) On March 12, 2026, an Immigration Judge granted Petitioner pre-conclusion voluntary departure "in lieu of removal" and found him "removable from the United States." (ECF No. 7-2 at PageID 21–23.)

And now, Petitioner challenges his detention as unlawful. (ECF No. 2 at PageID 7.) He explains that he has a medical condition and as a ground for his release, he asserts the deprivation of a liberty interest under the Fifth Amendment's Due Process Clause. (*Id.* at PageID 7–8.)

In its original Response, Respondent claimed that Petitioner was "subject to a final order of removal, and his detention [was] governed by 8 U.S.C. § 1231." (ECF No. 7 at PageID 16.) Respondent then argued that, under that provision and *Zadvydas v. Davis*, it was "authorize[d]" to detain Petitioner "beyond the initial 90-day removal period" for at least six months after an order of removal. (*Id.*; *see also Zadvydas v. Davis*, 533 U.S. 678 (2001).)

But Respondent did not attach or cite a final order of removal. (ECF No. 7 at PageID 15–16.) And it noted that Petitioner "*was warned* that failure to timely depart the United States would result in the entry of an alternate final order of removal" under 8 C.F.R. § 1240.26(d).

(ECF No. 7 at PageID 15–16 (emphasis added).) But as the Court noted, that warning would have made sense "if Petitioner were able to 'timely depart the United States.'" (ECF No. 9 at PageID 38 n.2 (citing ECF No. 7 at PageID 16).) Respondent, though, had detained him before he filed the Petition and has kept him detained before and after his date of voluntary departure. (ECF No. 7 at PageID 16.)

Because Respondent held him in detention, the Court found that Petitioner could not have voluntarily departed by May 12, 2026. (*See* ECF No. 9 at PageID 38 n.2.) And it ordered Respondent to inform the Court whether Petitioner was truly subject to a final order of removal. (*Id.*)

Based on the information available then, the Court concluded that *Zadvydas* did not govern Petitioner's detention. *See El Badrawi v. United States*, 787 F. Supp. 2d 204, 231 (D. Conn. 2011) ("[T]he procedures and rules that apply in a case of voluntary departure should not be conflated with those that apply following an order of removal. The mandate to use detention in cases of removal, 8 U.S.C. § 1231(a)(2), clearly does not apply in cases of voluntary departure, and therefore, it does not explain the authority for detention in this case."); *see also Zadvydas*, 533 U.S. at 682, 701.

The Court concluded that 8 C.F.R. § 240.25(b) governed this Petition instead, and that Respondent's basis for "statutory or regulatory authority supporting the use of detention following a grant of voluntary departure" was unclear. (*See* ECF No. 9 at PageID 39 (citing *El Badrawi*, 787 F. Supp. 2d at 231).) So the Court ordered Respondent to identify the source of its authority to continue detaining Petitioner nearly five months after the date of his voluntary removal, May 12, 2026. (*See El Badrawi*, 787 F. Supp. 2d at 231–32; *see also* ECF No. 7-2 at PageID 23.)

After all, subsection 240.25(b) allows "any conditions" deemed "*necessary to ensure the alien's timely departure*," but Petitioner's "removal under safeguards" no longer seemed to "ensure the alien's timely departure" and it was unclear why Petitioner remained detained and unable to voluntarily depart. *See El Badrawi*, 787 F. Supp. 2d at 231–32 (emphasis in original) (citation modified).

In its Response to the Second Order to Show Cause, Respondent agreed with the Court "that the detention authority for voluntary departure and final orders of removal should not be conflated." (ECF No. 10 at PageID 42 n.2 ("In hindsight, Counsel in his initial response should have raised only the argument concerning the final order of removal, not the separate argument concerning voluntary departure.").) It noted that Petitioner's voluntary departure order "became a final order of removal upon Petitioner's overstay of the voluntary departure period." (*Id.* at PageID 41.) And it stated that Judge Lipman's prior stay preventing Respondent from removing Petitioner from the district "prevent[ed] immigration officials from effectuating Petitioner's voluntary departure." (*Id.* at PageID 42–43.)

**ANALYSIS**

Having considered the Response to the Second Order to Show Cause, the Court rejects Respondent's arguments. Respondent prevented Petitioner from leaving the country by his date of voluntary departure. (*See* ECF No. 9.) The Immigration Judge allowed Petitioner to voluntarily depart the United States by a certain date, but Respondent had detained him through his date of voluntary departure. (ECF No. 7 at PageID 16.)

As the Court noted, Petitioner "*was warned* that failure to timely depart the United States would result in the entry of an alternate final order of removal" under 8 C.F.R. § 1240.26(d). (ECF No. 7 at PageID 15–16 (emphasis added).) But that warning did not make sense: Petitioner

was not "able to 'timely depart the United States.'" (ECF No. 9 (citing ECF No. 7 at PageID 16).) The Court thus found that Petitioner could not have voluntarily departed by May 12, 2026. (*See id.*) So as Respondent now shows, Petitioner remained in the United States past his date of voluntary departure and there is now an "alternate" order of removal under 8 C.F.R. § 1240.26(d). (*Compare* ECF No. 10 at PageID 41, *with* ECF No. 7 at PageID 16.)

The Court maintains its original conclusion that Respondent prevented Petitioner from leaving the country by his date of voluntary departure. (*See* ECF No. 10 at PageID 42.) Respondent offers one lone justification: Respondent "was subject to a federal court order staying transfer of Petitioner from the district for most of the voluntary period." (*Id.*) Judge Lipman's second order staying Petitioner's transfer outside of this district "was in place until May 11, 2026 when Judge Lipman dismissed Petitioner's amended Petition." (*Id.*) So "during most of the voluntary departure period, Petitioner was subject to a federal court order staying transfer and *effectively preventing immigration officials from effectuating Petitioner's voluntary departure*." (*Id.* at PageID 42–43 (emphasis added).)

But Judge Lipman's Order stated that Respondent "shall not *transfer Gutierrez Hidalgo out of the West Tennessee Detention Facility* during the pendency of this action." *Gutierrez Hidalgo v. Noem*, No. 2:26-CV-02217-SHL-CGC, 2026 WL 804192, at *2 (W.D. Tenn. Mar. 23, 2026) (emphasis added). In that Order, dated March 23, 2026, Judge Lipman aimed to prevent Respondent from transferring Petitioner to a different facility in another jurisdiction. *See id.*; *see also El Badrawi*, 787 F. Supp. 2d at 231–32 (8 C.F.R. § 240.25(b) allows "any conditions" deemed "necessary to ensure the alien's timely departure," and "removal under safeguards" should "ensure the alien's timely departure"). If Respondent was unclear about whether Petitioner could voluntarily depart, it easily could have sought clarification from Judge Lipman

rather than detaining him past the date. What is more, nearly five months after Petitioner's date of voluntary departure, Respondent continues to detain him and offers no reason why. (ECF No. 10.)

Respondent has effectively deprived Petitioner of the ability to leave the country. Further "undue delay would impose hardship" on Petitioner, and if the Court required him to pursue an appeal with the Board of Immigration Appeals, "his appeal process would likely take six months or more." *See Hernandez v. Ladwig*, No. 2:26-cv-02081-SHL-atc, 2026 WL 324020, at *4 (W.D. Tenn. Feb. 6, 2026). Had Respondent simply released Petitioner before his court-ordered voluntary departure date, Petitioner would have been able to return to his country. So "any appeal would be futile, and exhaustion is excused." *See id.*

## CONCLUSION

The Court **GRANTS** the Petition. Respondent is **ORDERED** to release Petitioner immediately. Respondent is **ORDERED** to file a Status Report with this Court on or before October 15, 2026, to certify compliance with this Order.

**SO ORDERED**, this 13th day of October, 2026.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE